**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-03142

**DIANE VARLESI**,

Plaintiff,

v.

**STRUMBA MEDIA LLC d/b/a MIRACLE NOODLE**, a California corporation;
**WHOLE FOODS ROCKY MOUNTAIN/SOUTHWEST, L.P**., a Texas corporation; and
**SUPER FREC USA, INC.** d/b/a as SHIRATAKI FACTORY SUPER FREC USA Inc.; SHIRATAKI FACTORY and/or FREC FOOD, a California corporation,

Defendants.

## SECOND AMENDED COMPLAINT FOR DAMAGES

NOW COMES the Plaintiff, DIANE VARLESI, by and through her attorneys, Paul J. Komyatte of The Komyatte Law Firm LLC, and for her SECOND AMENDED COMPLAINT against the Defendants, STRUMBA MEDIA LLC d/b/a MIRACLE NOODLE, WHOLE FOODS ROCKY MOUNTAIN/SOUTHWEST, L.P., and SUPER FREC USA, INC., states as follows:

## FACTS COMMON TO ALL COUNTS

### Nature of Action

1. This is a product liability action arising out of a life-threatening bowel obstruction caused by a mass of undigested noodles designed, manufactured, processed, distributed, marketed, and sold by the Defendants, which required surgery and caused serious injuries to the Plaintiff.

### Jurisdiction and Venue

2. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the Plaintiff and Defendants are citizens of different states and the value of the matter in controversy exceeds seventy-five thousand dollars ($75,000.00).

3. Venue is proper in the United States District Court, District of Colorado, pursuant to 28 U.S.C. § 1391(a) because the subject incident and injuries giving rise to the causes of action occurred in this judicial district.

**Parties**

4. At all times relevant and on or about February 11, 2014, Plaintiff Diane Varlesi was a citizen of Colorado. Diane Varlesi may hereinafter be referred to as "Plaintiff."

5. At all times relevant and on or about February 11, 2014, Defendant Strumba Media LLC d/b/a Miracle Noodle was a California Corporation authorized and doing business in the State of Colorado and with its principal place of business located in California. Strumba Media LLC d/b/a Miracle Noodle can be served with process by serving its registered agent Jonathan Carp, 2700 Neilson Way #631, Santa Monica, CA 90405. Strumba Media LLC d/b/a Miracle Noodle will hereinafter be referred to as "Miracle Noodle" and/or "Defendant."

6. At all times relevant and on or about February 11, 2014, Defendant Whole Foods Rocky Mountain/Southwest, L.P. was a Texas Corporation authorized and doing business in the State of Colorado and with its principal place of business located in Texas. Whole Foods Rocky Mountain/Southwest, L.P. will hereinafter be referred to as "Whole Foods" and/or "Defendant."

7. At all times relevant and on or before February 11, 2014, Super Frec USA, Inc. was a California corporation with its principal place of business located in California and doing business under a variety of trade names, including Frec Food; Shirataki Factory Super Frec Usa Inc.; and Shirataki Factory. Super Frec USA Inc. will hereinafter be referred to as "Super Frec."

8. At all times relevant and on or about February 11, 2014, Super Frec was in the business of designing, importing, packaging, preparing, marketing, growing, processing, manufacturing, and distributing products, including food products, shirataki noodles, shirataki food products and the types of noodles that injured the Plaintiff (hereinafter "the Super Frec products"). Super Frec designed, packaged, prepared, marketed, grew, manufactured, processes, distributed and sold Super Frec products that consisted of and/or were made into the noodles that injured the Plaintiff and that are the subject of this action (hereinafter the "subject noodles").

9. At all times relevant and on or about February 11, 2014, Miracle Noodle is believed to have been in the business of designing, importing, packaging, preparing, marketing, and distributing products and retail and commercial sales of products, including but not limited to a range of noodles, including the noodles that injured the Plaintiff and that are the subject of this action (hereinafter the "subject noodles"), which were designed, manufactured, distributed, marketed, prepared, processed, packaged, and/or sold by Miracle Noodle. Miracle Noodle is believed to direct its worldwide operations from its headquarters in California and is also believed to ship products internationally. Miracle Noodle is also believed to ship and sell its products nationwide, including to major retailers like Whole Foods.

10. At all times relevant and on or about February 9, 2014, and February 11, 2014, Whole Foods was in the business of the retail sales of food products, including but not limited to the subject noodles, through its retail establishments in Colorado.

**Background And Common Allegations**

11. On or about February 9, 2014, a Whole Foods store located at or about 7635 North Academy Boulevard, Colorado Springs, Colorado 80920, known as the Pikes Peak store,

sold Miracle Noodle products to its customers, including in particular the noodles that are the subject of this action.

12. On or about February 9, 2014, Plaintiff purchased a package of Miracle Noodle (hereinafter "the subject noodles") noodles from the Pikes Peak Whole Foods Store.

13. The subject noodles were manufactured from glucomannan, a dietary fiber derived from the root of the konjac plant, which is native to Asia. Glucomannan is also known by names including "konyaku," "konnyaku," "konjak," "konjanku," and "elephant yam." The noodles are also known as "shirataki noodles."

14. Glucomannan is indigestible. It can swell to up to seventeen times its original size in the digestive system. It can be eaten, but the body extracts nothing from the fiber.

15. In addition to noodles, glucomannan is sold in many forms, including powder, capsules, tablets, and candy.

16. Glucomannan has been banned in some forms because of choking deaths. Glucomannan is known to have the potential to obstruct the throat, esophagus, and intestines.

17. Defendants tout Miracle Noodle as a diet food, claiming on the packaging that the noodles are "guilt free," have "zero calories," are free of soy, gluten, and cholesterol, and are vegan.

18. Miracle Noodle's website (www.miraclenoodle.com) makes claims that the noodles are "an essential part of any weight loss program" and that eating them "slows digestion and prolongs the sensation of fullness." The website further claims that, "Medical studies show beneficial effects for Type II Diabetes, Constipation, Obesity and Cholesterol."

19. The Miracle Noodle website features a "doctor trusted … consumer protection certificate" claiming that a doctor has found the site to, *inter alia*, make "reasonable science-

based health claims." Miracle Noodle Founder and President Jonathan Carp describes himself in the company's promotional materials as "a medical doctor with a passion for health through nutrition."

20. In promotional materials, Miracle Noodle advertises eating its noodles as an alternative to gastric bypass surgery.

21. Whole Foods describes itself on its website (www.wholefoodsmarket.com) as "America's Healthiest Grocery Store" and claims, "We carefully evaluate each and every product we sell." Whole Foods also claims to "seek out the finest natural and organic foods available [and] maintain the strictest quality standards in the industry"; that it is "committed to foods that are fresh, wholesome and safe to eat"; and that it "provide[s] food and nutritional products that support health and well-being."

22. The subject noodles' packaging lacks warnings about the risk for obstructions in the digestive system.

23. The subject noodles' packaging gives no warning that noodles made from glucomannan may not be safe for people with certain health conditions, such as those who have had gastric bypass surgery.

24. Miracle Noodle's website and other promotional materials similarly lack warnings of the risk for blockages in the digestive system or that people with certain health conditions should not eat the product.

25. Miracle Noodle caters to customers who struggle with their weight. The company even has a reference to gastric bypass surgery in its promotional materials. It is foreseeable that some of the customers who eat Miracle Noodle have had gastric bypass surgery.

26. Miracle Noodle's packaging and promotional materials give no warnings that the

product is unsuitable for people who have had gastric bypass surgery.

27. The Super Frec products and the subject noodles were manufactured, grown, packaged, assembled, processed, produced, marketed and sold by Super Frec. On its website, Super Frec describes itself as "your co-packer for your Shirataki." It contains photographs of its "product" which include various noodles as well as photos of what appears to be a noodle or food processing facility. Super Frec's website states that it "is the only Shirataki manufacturer in North America who co-packs for other companies." Super Frec provided to Miracle Noodle the Super Frec products and/or the subject noodles, and Miracle Noodle, in turn, packaged, prepared, marketed, and distributed the end product to stores such as Whole Foods, which then sold the subject noodles to the Plaintiff.

28. On or about February 10, 2014, Plaintiff ate the subject noodles for dinner in a typical and foreseeable manner. On or about February 11, 2014, Plaintiff woke up in the early morning with intense abdominal pain that forced her to go to a hospital emergency room, where she was hospitalized and operated on to remove a mass of noodles obstructing her bowel. Plaintiff spent seven days in the hospital.

29. As a result of the noodle obstruction and resulting hospitalization and surgery, Plaintiff suffered serious personal injuries, including inability to work, pain and suffering, and chronic infections.

30. Some of the allegations herein are made and/or may be perceived to be made in the alternative. To the extent required or necessary, Plaintiff will elect which claims and allegations she will pursue prior to trial.

31. **Miracle Noodle as "Manufacturer."** Miracle Noodle is a "manufacturer" for purposes of and as defined in the Colorado Product Liability Act. Miracle Noodle is the and/or a

principal distributor or seller of the subject noodles and, as such, Miracle Noodle is deemed a manufacturer of the subject noodles pursuant to C.R.S. § 13-21-402.

32. Miracle Noodle knew or should have known that the subject noodles posed a risk of choking or of blockages of the digestive system. Miracle Noodle certainly knew that the noodles were not digestible and/or posed the risk of blockage. As such, it is alleged on information and belief that Miracle Noodle had actual knowledge of a defect in the product, further making Miracle Noodle a manufacturer of the subject noodles pursuant to C.R.S. § 13-21-401.

33. Miracle Noodle is further believed to have prepared the product or parts of the product prior to the sale of the product to Whole Foods, which further makes Miracle Noodle a manufacturer pursuant to C.R.S. § 13-21-401.

34. Miracle Noodle knew or should have known that people who had gastric bypass surgery could be at particular risk of digestive system blockages from its product. Miracle Noodle's reference to gastric bypass surgery in its promotional materials and its catering to customers who struggle with their weight demonstrate that Miracle Noodle knew that people who had gastric bypass surgery might eat its noodles. It is accordingly further alleged on information and belief that Miracle Noodle had actual knowledge of a defect in the product, which further renders Miracle Noodle a manufacturer of the subject noodles pursuant to C.R.S. § 13-21-401.

35. **Whole Foods as "manufacturer."** Whole Foods is also a "manufacturer" for purposes of and as defined in the Colorado Product Liability Act. Whole Foods holds itself out as "*carefully evaluat[ing] each and every product we sell*" and "maintain[ing] the strictest quality standards in the industry" to provide "foods that are fresh, wholesome and safe to eat"

and "support health and well-being." If Whole Foods "carefully evaluated" the subject noodles, as it represents it did on its website, then Whole Foods knew or should have known of the defect in the product which is discussed at length throughout this Complaint. As such, it is alleged on information and belief that Whole Foods had actual knowledge of a defect in the product, deeming Whole Foods a manufacturer of the subject noodles pursuant to C.R.S. § 13-21-401.

36. Given that it purportedly "carefully evaluated" the subject product, Whole Foods knew or should have known that Miracle Noodle catered to customers who struggle with their weight. Whole Foods knew or should have known that some such customers may have had gastric bypass surgery and that Miracle Noodle could pose a particular risk to such customers. As such, it is further alleged on information and belief that Whole Foods had actual knowledge of a defect in the product, further deeming Whole Foods a manufacturer of the subject noodles pursuant to C.R.S. § 13-21-401.

## COUNTS AGAINST MIRACLE NOODLE

### COUNT I
### Negligence v. Miracle Noodle

37. Plaintiff incorporates all allegations made elsewhere in this Complaint.

38. At all times relevant, Miracle Noodle owed a duty to use ordinary care in the design, manufacture, marketing, promotion, processing, distribution, and sale of the subject noodles.

39. At all times relevant, Miracle Noodle had a duty to design, manufacture, market, promote, process, distribute, and sell food products, including noodles and including the subject noodles, such that those products would not pose unnecessary risks of harm to consumers reasonably expected to use such products.

40. Miracle Noodle had a duty to refrain from selling noodles, including the subject noodles, when it became aware of hazards and potential hazards posed by such noodles, including intestinal blockages caused by eating such noodles. At a minimum, Miracle Noodle owed a duty to warn consumers and users that such noodles could cause blockages, causing serious injuries.

41. Miracle Noodle had a duty to refrain from selling noodles, including the subject noodles, to customers who had gastric bypass surgery when it became aware of hazards and potential hazards posed by such noodles to such customers, including intestinal blockages caused by eating such noodles. At a minimum, Miracle Noodle owed a duty to warn consumers and users that such noodles posed a greater risk to people who had gastric bypass surgery.

42. Miracle Noodle had a duty to provide reasonable and adequate warnings and instructions with its products such as the subject noodles to ensure that the subject noodles would be used safely, appropriately, and without causing the risk of severe intestinal blockage.

43. Miracle Noodle negligently designed, tested, approved, manufactured, marketed, distributed, prepared, and sold the subject noodles in that it failed to exercise reasonable care to prevent the subject noodles from creating an unreasonable risk of harm to a person who might reasonably be expected to use them in an expected or reasonably foreseeable manner.

44. At the time of the sale of the subject noodles, Miracle Noodle was aware or should have been aware that the main ingredient in the subject noodles posed a risk of digestive system obstructions.

45. At the time of the sale of the subject noodles, Miracle Noodle was aware or should have been aware of the potential serious injuries that could occur to a consumer if Miracle Noodle sold noodles without undertaking reasonable care to ensure that the noodles were safe for

foreseeable and intended uses.

46. At all times herein relevant, and on or before February 9, 2014, and/or February 11, 2014, Miracle Noodle, by and through its duly authorized agents, employees and/or servants, or representatives, breached the aforementioned duties in one or more of the following careless and negligent acts and/or omissions:

a. Miracle Noodle carelessly and negligently designed, manufactured, marketed, processed, distributed, and sold the subject noodles, which posed a risk of digestive system blockages;

b. Miracle Noodle carelessly and negligently designed, manufactured, marketed, distributed, and sold the subject noodles, which may have posed an additional risk of digestive system obstructions to people who had gastric bypass surgery;

c. Miracle Noodle carelessly and negligently failed to institute and enforce a policy for the review of safety and suitability for a particular use for Miracle Noodle products, including the subject noodles;

d. Miracle Noodle carelessly and negligently failed to warn purchasers and foreseeable users such as the Plaintiff of the subject noodles' defective and otherwise known dangerous condition;

e. It is believed that Miracle Noodle may have carelessly and negligently failed to comply with the letter and/or spirit of federal Food and Drug Administration ("FDA") labeling requirements;

f. Miracle Noodle carelessly and negligently advertised the subject noodles as being safe, healthy, and an "essential part of any weight loss program"

when it knew or should have known of the risk posed by its noodle products, including the subject noodles;

g. Miracle Noodle carelessly and negligently advertised the subject noodles as having health and weight loss benefits that are believed to be unproven and/or that are believed to be or may be in violation of the letter and/or spirit of FDA and Federal Trade Commission ("FTC") requirements;

h. Miracle Noodle sold the subject noodles when it knew or should have known that the noodles were unsuitable for foreseeable usage and subject to causing injury;

i. Miracle Noodle failed to provide reasonable and adequate warnings and instructions regarding the subject noodles. For example, Miracle Noodle failed to instruct potential users of the product's propensity for swelling and of the need to drink plenty of liquids when using the product.

j. Miracle Noodle was otherwise careless and negligent in the design, manufacture, distribution, and/or sale of the subject noodles.

47. Miracle Noodle knew or should have known that prudent safety practices, customer safety, and/or federal regulations required Miracle Noodle to conduct a quality and safety review of the noodles it was selling to ensure their safety, but Miracle Noodle failed to do so and willingly sold noodles that Miracle Noodle knew or should have known could harm and injure consumers.

48. Miracle Noodle acted unreasonably in designing, manufacturing, marketing, distributing, preparing, and/or selling noodles that presented a substantial and unreasonable risk of injury to foreseeable users, including the Plaintiff.

49. As a direct and proximate result of Miracle Noodle's negligent acts and omissions, Plaintiff sustained serious injuries.

50. As a direct and proximate result of Miracle Noodle's negligent acts and omissions, Plaintiff Diane Varlesi suffered pecuniary and non-pecuniary losses.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, MIRACLE NOODLE, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNT II**
**Strict Liability v. Miracle Noodle**

51. Plaintiff incorporates all allegations made elsewhere in this Complaint.

52. At all times material to this action, the Defendant Miracle Noodle was in the business of designing, testing, approving, manufacturing, marketing, preparing, processing, distributing, and selling noodles, including the subject noodles giving rise to the injuries and damages to Plaintiff.

53. At the time the subject noodles left the control of Miracle Noodle, they were defective and unreasonably dangerous to a person who might reasonably be expected to use them. The subject noodles were defective and unreasonably dangerous in one or more of the following respects:

a. The subject noodles were believed to be known to, intended to, and designed to swell to up to seventeen times their size in the digestive tract, posing obvious risks of blockage;

b. The subject noodles were designed to be eaten but could not be digested, posing risks of blockage from masses of undigested product;

c. The subject noodles were deficient in that they were made of glucomannan, a

fiber known to have caused choking deaths and to pose risk of obstructions of the digestive system;

d. The noodles were deficiently and defectively designed, manufactured, and processed in that the packaging failed to warn consumers of the risk of digestive system obstruction and/or may have failed to comply with federal FDA and FTC labeling and advertising requirements;

e. The subject noodles were not adequately tested or evaluated for their foreseeable and intended use, which included a consumer eating the noodles;

f. The subject noodles were not accompanied by reasonable and adequate warnings and instructions regarding their risks and regarding precautions that should be taken when using the product;

g. The subject noodles were otherwise defective and unreasonably dangerous in that they were completely unfit for and unsuitable for being safely consumed in a reasonably foreseeable manner.

54. The subject noodles were expected by Miracle Noodle to reach, and did reach, the user or consumer without substantial change to the condition in which they were sold.

55. The Plaintiff was a person who reasonably would be expected to use the subject noodles.

56. The Plaintiff used the noodles in a manner that was both foreseeable to Miracle Noodle and intended by Miracle Noodle.

57. The subject noodles were dangerous beyond the contemplation of the ordinary consumer, who Miracle Noodle knew or should have known would not otherwise be aware of the subject noodles' propensity to block the digestive system when subjected to normal use, such as

being eaten.

58. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject noodles when they left the control of Miracle Noodle, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

59. As a direct and proximate result of the above occurrence, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, MIRACLE NOODLE, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNT III
## Breach of Warranties v. Miracle Noodle

60. Plaintiff incorporates all allegations made elsewhere in this Complaint.

61. Defendant Miracle Noodle knew or had reason to know the particular purposes for which the subject noodles were required and were to be used, and that purchasers and users such as Plaintiff would rely on Defendant's skill or judgment in designing, testing, manufacturing, selling, and furnishing goods suitable for such purposes and uses. In particular, Miracle Noodle knew that a consumer, to use its noodles, would need to eat the noodles, and Miracle Noodle knew that a consumer would rely on Miracle Noodle to provide noodles that could be eaten without obstructing the digestive system.

62. The subject noodles were not fit for the particular purposes for which they were intended, and for which they were used. The noodles were incapable of being simply eaten by a

consumer without obstructing the digestive system and subjecting the consumer to the risk of serious injury.

63. The subject noodles did not conform to the warranties, affirmations, and representations made by Miracle Noodle.

64. In particular, Miracle Noodle impliedly warranted that the subject noodles were of merchantable quality, would perform satisfactorily, and would not be unreasonably dangerous to the consumer when used in a reasonably foreseeable manner. This implied warranty of Miracle Noodle was relied upon in the selection and purchase of the subject noodles.

65. The defective condition of the subject noodles, including their propensity to swell and block the digestive system, constitutes a breach by Miracle Noodle of its express and/or implied warranties, rendering Miracle Noodle liable for injuries and damages to Plaintiff caused by defects and inadequacies in the subject noodles.

66. As a direct and proximate result of Miracle Noodle's breach of its express and/or implied warranties, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

67. As a direct and proximate result of Miracle Noodle's breach of its express and/or implied warranties, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, MIRACLE NOODLE, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

## COUNTS AGAINST WHOLE FOODS

### COUNT IV
### Negligence v. Whole Foods

68. Plaintiff incorporates all allegations made elsewhere in this Complaint.

69. At all times relevant, Whole Foods owed a duty to use ordinary care in the design, manufacture, marketing, promotion, distribution, and sale of the subject noodles.

70. At all times relevant, Whole Foods had a duty to design, manufacture, market, promote, distribute, and sell food products, including noodles and including the subject noodles, such that those products would not pose unnecessary risks of harm to consumers reasonably expected to use such products.

71. Whole Foods had a duty to refrain from selling noodles, including the subject noodles, that could cause hazards and potential hazards, including digestive system obstructions caused by the swelling of the noodles after consumption. At a minimum, Whole Foods owed a duty to warn consumers and users that such noodles could obstruct the digestive system when eaten.

72. Whole Foods negligently designed, tested, approved, manufactured, marketed, distributed, prepared, and sold the subject noodles in that it failed to exercise reasonable care to prevent the subject noodles from creating an unreasonable risk of harm to a person who might reasonably be expected to use them in an expected or reasonably foreseeable manner.

73. At the time of the sale of the subject noodles, Whole Foods was aware or should have been aware that the noodles' ingredients could cause blockages to the digestive system.

74. At the time of the sale of the subject noodles, Whole Foods was aware or should have been aware of the potential serious injuries that could occur to a consumer if the noodles caused blockages to the consumer's digestive system.

75. Whole Foods had a duty not to cavalierly give its "stamp of approval" to products that could pose a risk of serious injuries to consumers. Whole Foods knew that consumers relied on Whole Foods' commitment to selling reliable and healthy foods and that consumers reasonably presumed that food products sold by Whole Foods were safe, reliable, and healthy.

76. At the time of the sale of the subject noodles, Whole Foods was aware or should have been aware of the potential serious injuries that could occur to a consumer if Whole Foods sold noodles without undertaking reasonable care to ensure that the noodles were safe for foreseeable and intended uses.

77. At all times herein relevant, and on or before February 9, 2014, and/or February 11, 2014, Whole Foods, by and through its duly authorized agents, employees, and/or servants or representatives, breached the aforementioned duties in one or more of the following careless and negligent acts and/or omissions:

a. Whole Foods carelessly and negligently designed, manufactured, marketed, distributed, and sold the subject noodles which were believed to be known to, intended to, and designed to swell to up to seventeen times their size in the digestive tract;

b. Whole Foods carelessly and negligently designed, manufactured, marketed, distributed, and sold the subject noodles which were designed to be eaten but could not be digested;

c. Whole Foods carelessly and negligently designed, manufactured, marketed, distributed, and sold the subject noodles which were unreasonably susceptible to obstructing the digestive system when eaten due to their deficient design and manufacture;

d. Whole Foods carelessly and negligently designed, manufactured, marketed, distributed, and sold the subject noodles in such a way that they could obstruct the digestive system without warning to the user;

e. Whole Foods carelessly and negligently failed to institute and enforce a policy for the review of safety and suitability for a particular use for Whole Foods' products, including the subject noodles;

f. Whole Foods carelessly and negligently failed to ensure proper quality control for the subject noodles;

g. Whole Foods carelessly and negligently failed to warn purchasers and foreseeable users such as the Plaintiff of the subject noodles' defective and otherwise known dangerous condition;

h. Whole Foods carelessly and negligently sold and distributed noodles that Whole Foods knew or should have known, based on its claims of evaluating "each and every product" it sells for health, safety and nutrition, and based on common knowledge of the risks of glucomannan, were subject to causing obstruction of the digestive system, resulting in injuries to users of its noodles when used in their ordinary and expected manner;

i. Whole Foods carelessly and negligently gave its stamp of approval to the subject noodles by selling them in its stores, thereby giving consumers the false impression that the product had been carefully reviewed and evaluated by Whole Foods and was thus safe and healthy;

j. Whole Foods sold the subject noodles when it knew or should have known

that the noodles were unsuitable for foreseeable usage and subject to causing obstruction of the digestive system; and

k. Whole Foods was otherwise careless and negligent in the design, manufacture, importation, marketing, distribution, and/or sale of the subject noodles.

78. Whole Foods acted unreasonably in designing, manufacturing, marketing, distributing, preparing, and/or selling noodles that presented a substantial and unreasonable risk of injury to foreseeable users, including the Plaintiff.

79. As a direct and proximate result of Whole Foods' negligent acts and omissions, Plaintiff sustained severe and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

80. As a direct and proximate result of Whole Foods' negligent acts and omissions, Plaintiff Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, WHOLE FOODS MARKET, INC., a Texas Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNT V**
**Strict Liability v. Whole Foods**

81. Plaintiff incorporates all allegations made elsewhere in this Complaint.

82. At all times material to this action, the Defendant Whole Foods was in the business of designing, testing, approving, manufacturing, marketing, preparing, distributing, and

selling food, including the subject noodles giving rise to the injuries and damages to Plaintiff.

83. At the time the subject noodles left the control of Whole Foods, they were defective and unreasonably dangerous to a person who might reasonably be expected to use them. The subject noodles were defective and unreasonably dangerous in one or more of the following respects:

a. The subject noodles were believed to be known to, intended to, and designed to swell to up to seventeen times their size in the digestive tract, posing obvious risks of blockage;

b. The subject noodles were designed to be eaten but could not be digested, posing risks of blockage from masses of undigested product;

c. The subject noodles were deficient in that they were made of glucomannan, a fiber known to have caused choking deaths and to pose risk of obstructions of the digestive system;

d. The noodles were deficiently and defectively designed, manufactured, and processed in that the packaging failed to warn consumers of the risk of digestive system obstruction and/or may have failed to comply with federal FDA and FTC labeling and advertising requirements;

e. The subject noodles were not adequately tested or evaluated for their foreseeable and intended use, which included a consumer eating the noodles;

f. The subject noodles were not accompanied by reasonable and adequate warnings and instructions regarding their risks and regarding precautions that should be taken when using the product;

g. The subject noodles were otherwise defective and unreasonably dangerous in that

they were completely unfit for and unsuitable for being safely consumed in a reasonably foreseeable manner.

84. The subject noodles were expected by Whole Foods to reach, and did reach, the user or consumer without substantial change to the condition in which they were sold.

85. The Plaintiff was a person who reasonably would be expected to use the subject noodles.

86. The Plaintiff used the noodles in a manner that was both foreseeable to Whole Foods and intended by Whole Foods.

87. The subject noodles were dangerous beyond the contemplation of the ordinary consumer, which Whole Foods knew or should have known would not otherwise be aware of the subject noodles' propensity to obstruct the digestive system when subjected to normal use, such as eating them.

88. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject noodles when they left the control of Whole Foods, Plaintiff sustained severe and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

89. As a direct and proximate result of the above occurrence, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, WHOLE FOODS MARKET, INC., a Texas Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNT VI**
**Breach of Warranties v. Whole Foods**

90. Plaintiff incorporates all allegations made elsewhere in this Complaint.

91. Defendant Whole Foods knew or had reason to know the particular purposes for which the subject noodles were required and were to be used and that purchasers and users such as Plaintiff would rely on Defendant's skill or judgment in designing, testing, manufacturing, selling, and furnishing goods suitable for such purposes and uses. In particular, Whole Foods knew that a consumer, to use the noodles, would need to eat the noodles, and Whole Foods knew that a consumer would rely on Whole Foods to provide noodles that could be eaten without obstruction of the digestive system.

92. The subject noodles were not fit for the particular purposes for which they were intended, and for which they were used. The noodles could not be eaten by a consumer without risk to the consumer of obstruction of the digestive system and serious injury.

93. The subject noodles did not conform to the warranties, affirmations, and representations made by Whole Foods.

94. In particular, Whole Foods impliedly warranted that the subject noodles were of merchantable quality, would perform satisfactorily, and would not be unreasonably dangerous to the consumer when used in a reasonably foreseeable manner. This implied warranty of Whole Foods was relied upon in the selection and purchase of the subject noodles.

95. The defective condition of the subject noodles, including its propensity to obstruct the digestive system, constitutes a breach by Whole Foods of its express and/or implied warranties, rendering Whole Foods liable for injuries and damages to Plaintiff caused by defects and inadequacies in the subject noodles.

96. As a direct and proximate result of Whole Foods' breach of its express and/or

implied warranties, Plaintiff sustained severe and chronic injuries, and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

97. As a direct and proximate result of Whole Foods' breach of its express and/or implied warranties, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, WHOLE FOODS MARKET, INC., a Texas Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNTS AGAINST SUPER FREC**

**COUNT VII**
**Negligence v. Super Frec**

98. Plaintiff incorporates all allegations made elsewhere in this Complaint.

99. At all times relevant, Super Frec owed a duty to use ordinary care in the design, manufacture, growing, marketing, promotion, processing, distribution, and sale of the Super Frec products and/or the subject noodles.

100. At all times relevant, Super Frec had a duty to design, manufacture, market, promote, process, distribute, and sell food products, including the Super Frec products and subject noodles, such that those products would not pose unnecessary risks of harm to consumers reasonably expected to use such products.

101. Super Frec had a duty to refrain from selling food products, including the the Super Frec products, when it became aware or when it otherwise should have become aware of hazards and potential hazards posed by such noodles, including intestinal

blockages caused by eating such noodles. At a minimum, Super Frec owed a duty to warn its customers as well as consumers and users that such noodles could cause blockages, causing serious injuries.

102. Super Frec had a duty to refrain from food product, including the Super Frec products and/or the subject noodles, to customers who had gastric bypass surgery when it became aware of and/or otherwise should have become aware of hazards and potential hazards posed by such food products, including the subject noodles, to such customers, including intestinal blockages caused by eating such food products, including the subject noodles. At a minimum, Super Frec owed a duty to warn consumers and users that such food products, including the Super Frec productst and the subject noodles, posed a greater risk to people who had gastric bypass surgery.

103. Super Frec had a duty to provide reasonable and adequate warnings and instructions with its food products such as the Super Frec products and the subject noodles to ensure that its food products, including the Super Frec products and the subject noodles, would be used safely, appropriately, and without causing the risk of severe intestinal blockage.

104. Super Frec negligently designed, tested, approved, manufactured, grew, processed, marketed, distributed, prepared, and sold its food products, including the Super Frec products and/or including the subject noodles in that it failed to exercise reasonable care to prevent its products, including its shirataki products, the Super Frec products and the subject noodles, from creating an unreasonable risk of harm to a person who might reasonably be expected to use them in an expected or reasonably foreseeable manner.

105. At the time of the sale of the Super Frec products and/or the subject noodles, Super Frec was aware or should have been aware that the main ingredient in the Super Frec products and/or subject noodles posed a risk of digestive system obstructions.

106. At the time of the sale of the Super Frec products, shirataki prodocut and/or the subject noodles, Super Frec was aware or should have been aware of the potential serious injuries that could occur to a consumer if Super Frec sold such food product without undertaking reasonable care to ensure that the food product was safe for foreseeable and intended uses.

107. At all times herein relevant, and on or before February 9, 2014, and/or February 11, 2014, Super Frec, by and through its duly authorized agents, employees and/or servants, or representatives, breached the aforementioned duties in one or more of the following careless and negligent acts and/or omissions:

a. Super Frec carelessly and negligently grew, designed, manufactured, marketed, processed, distributed, and sold the Super Frec products and/or the subject noodles, which posed a risk of digestive system blockages;

b. Super Frec carelessly and negligently grew, designed, manufactured, marketed, processed, distributed, and sold the Super Frec products and subject noodles, which may have posed an additional risk of digestive system obstructions to people who had gastric bypass surgery;

c. Super Frec carelessly and negligently failed to institute and enforce a policy for the review of safety and suitability for a particular use for Super Frec products, including the Super Frec products and subject noodles;

d. Super Frec carelessly and negligently failed to warn purchasers and

foreseeable users such as the Plaintiff of the Super Frec products and the subject noodles' defective and otherwise known dangerous condition;

e. It is believed that Super Frec carelessly and negligently advertised and/or marketed the Super Frec products and subject noodles as being safe and healthy when it knew or should have known of the risk posed by its food products, including the Super Frec products and the subject noodles;

f. Super Frec sold the Super Frec products and/or subject noodles when it knew or should have known that the food product and noodles were unsuitable for foreseeable usage and subject to causing injury;

g. Super Frec failed to provide reasonable and adequate warnings and instructions regarding the the Super Frec products and subject noodles. For example, Super Frec failed to instruct potential users of the food product's propensity for swelling and of the need to drink plenty of liquids when using the product.

h. Super Frec was otherwise careless and negligent in the growth, processing, design, manufacture, distribution, marketing and/or sale of the Super Frec products and the subject noodles.

108. Super Frec knew or should have known that prudent safety practices, customer safety, and/or federal regulations required Super Frec to conduct a quality and safety review of the food products and/or noodles it was selling to ensure their safety, but Super Frec failed to do so and willingly sold the Super Frec products and noodles that Super Frec knew or should have known could harm and injure consumers.

109. Super Frec acted unreasonably in designing, manufacturing, marketing,

distributing, preparing, and/or selling food products and/or noodles that presented a substantial and unreasonable risk of injury to foreseeable users, including the Plaintiff.

110. As a direct and proximate result of Super Frec's negligent acts and omissions, Plaintiff sustained serious injuries.

111. As a direct and proximate result of Super Frec's negligent acts and omissions, Plaintiff Diane Varlesi suffered pecuniary and non-pecuniary losses.

**WHEREFORE**, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, SUPER FREC, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNT VIII**
**Strict Liability v. Super Frec**

112. Plaintiff incorporates all allegations made elsewhere in this Complaint.

113. At all times material to this action, the Defendant Super Frec was in the business of growing, designing, testing, approving, manufacturing, marketing, preparing, processing, distributing, marketing and selling food products, including the Super Frec products, the food products that were made into the subject noodles and/or the subject noodles (hereinafter "the subject food products"), giving rise to the injuries and damages to Plaintiff.

114. At the time the subject food products left the control of Super Frec, they were defective and unreasonably dangerous to a person who might reasonably be expected to use them. The subject food products were defective and unreasonably dangerous in one or more of the following respects:

i. The subject food products were believed to be known to, intended to, and designed to swell to up to seventeen times their size in the digestive tract, posing

obvious risks of blockage;

j. The subject food products were designed to be eaten but could not be digested, posing risks of blockage from masses of undigested product;

k. The subject food products were deficient in that they were made of glucomannan, a fiber known to have caused choking deaths and to pose risk of obstructions of the digestive system;

l. The subject food products were deficiently and defectively designed, manufactured, and processed in that the packaging failed to warn consumers of the risk of digestive system obstruction and/or may have failed to comply with federal FDA and FTC labeling and advertising requirements;

m. The subject food products were not adequately tested or evaluated for their foreseeable and intended use, which included a consumer eating the noodles;

n. The subject food products were not accompanied by reasonable and adequate warnings and instructions regarding their risks and regarding precautions that should be taken when using the product;

o. The subject food products were otherwise defective and unreasonably dangerous in that they were completely unfit for and unsuitable for being safely consumed in a reasonably foreseeable manner.

115. The subject food products were expected by Super Frec to reach, and did reach, the user or consumer without substantial change to the condition in which they were sold.

116. The Plaintiff was a person who reasonably would be expected to use the subject food products.

117. The Plaintiff used the subject food products in a manner that was both foreseeable

to Super Frec and intended by Super Frec.

118. The subject food products were dangerous beyond the contemplation of the ordinary consumer, who Super Frec knew or should have known would not otherwise be aware of the subject noodles' propensity to block the digestive system when subjected to normal use, such as being eaten.

119. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject food products when they left the control of Super Frec, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered great pain and anguish, both in mind and in body, and will in the future continue to suffer.

120. As a direct and proximate result of the above occurrence, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

WHEREFORE, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, SUPER FREC, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**COUNT IX**
**Breach of Warranties v. Super Frec**

121. Plaintiff incorporates all allegations made elsewhere in this Complaint.

122. Defendant Super Frec knew or had reason to know the particular purposes for which the subject food products were required and were to be used, and that purchasers and users such as Plaintiff would rely on Defendant's skill or judgment in designing, testing, manufacturing, selling, and furnishing goods suitable for such purposes and uses. In particular, Super Frec knew that a consumer, to use its food products, would need to

eat the noodles, and Super Frec knew that a consumer would rely on Super Frec to provide food products and/or noodles that could be eaten without obstructing the digestive system.

123. The subject food products were not fit for the particular purposes for which they were intended, and for which they were used. The subject food products were incapable of being simply eaten by a consumer without obstructing the digestive system and subjecting the consumer to the risk of serious injury.

124. The subject food products did not conform to the warranties, affirmations, and representations made by Super Frec.

125. In particular, Super Frec impliedly warranted that the subject food products were of merchantable quality, would perform satisfactorily, and would not be unreasonably dangerous to the consumer when used in a reasonably foreseeable manner. This implied warranty of Super Frec was relied upon in the selection and purchase of the subject food products.

126. The defective condition of the subject food products and noodles, including their propensity to swell and block the digestive system, constitutes a breach by Super Frec of its express and/or implied warranties, rendering Super Frec liable for injuries and damages to Plaintiff caused by defects and inadequacies in the subject food products and subject noodles.

127. As a direct and proximate result of Super Frec's breach of its express and/or implied warranties, Plaintiff sustained serious and chronic injuries and was and will be hindered and prevented from attending to her usual duties and affairs and has lost and will in the future lose the value of that time as aforementioned. Plaintiff has suffered

great pain and anguish, both in mind and in body, and will in the future continue to suffer.

128. As a direct and proximate result of Super Frec's breach of its express and/or implied warranties, Diane Varlesi suffered pecuniary and non-pecuniary losses, all being past, present, and future.

**WHEREFORE**, the Plaintiff, DIANE VARLESI, demands judgment in her favor and against the Defendant, SUPER FREC, a California Corporation, in an amount in excess of SEVENTY-FIVE THOUSAND ($75,000.00) DOLLARS, plus costs of this suit.

**CAUSATION & DAMAGES**
**(All Defendants)**

129. Plaintiff incorporates herein all allegations made elsewhere in this Complaint.

130. As a direct and proximate result of the defective and unreasonably dangerous condition of the subject noodles and the Defendants' acts and omissions set forth above, Plaintiff has incurred and seeks the following general and special damages:

(a) Pain and suffering and emotional distress, past and future;

(b) Reasonable and necessary medical, hospital, and rehabilitation care and services, nursing care and services, medication, therapy, and other expenses, past and future;

(c) Inconvenience;

(d) Loss of enjoyment of life or impairment of the quality of life;

(e) Loss of earnings and earning capacity;

(f) Physical impairment;

(g) Disfigurement and scarring.

(h) Any other losses and damages sustained by Plaintiff and to which she is legally entitled either pursuant to statute or the common law.

**WHEREFORE,** Plaintiff prays for and demands an award of damages to be fixed by the trier of fact in a reasonable amount. Additionally, Plaintiff asks for the costs of this action, reasonable attorney fees, all pre-judgment and post-judgment interest as provided by law, and for all such other relief to which she is legally entitled and as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this
28th day of January, 2016,

s/ *Paul J. Komyatte*
Paul J. Komyatte, #22750
The Komyatte Law Firm LLC
1536 Cole Blvd., Suite 300
Lakewood, CO 80401
Office: (720) 975-TKLF (8553)
Fax: (720) 528-8072
paul@komyattelawfirm.com

**Attorneys for Plaintiff**